Kimberly A. Beatty
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
800 North Last Chance Gulch, Suite 101
PO Box 1697
Helena, MT 59624
Telephone: (406) 443-6820
Facsimile:   (406) 443-6883
kim@bkbh.com

James D. Benak (Admitted *Pro Hac Vice*)
Tetzlaff Law Offices, LLC
227 W. Monroe Street, Suite 3650
Chicago, IL  60606
Telephone:  (312) 574-1050
Facsimile:  (312) 574-1001
Jbenak@tetzlafflegal.com

Attorneys for WEH Magic Valley Holdings, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| WEH Magic Valley Holdings, LLC, a limited liability corporation,<br><br>             Plaintiff,<br><br>     v.<br><br>EIH Parent, LLC, a limited liability company and James Carkulis, an individual,<br><br>             Defendants. | Case No. CV-15-00050-H-SEH<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff WEH Magic Valley Holdings, LLC (hereinafter "Plaintiff" or

"WEH") through its attorneys Browning, Kaleczyc, Berry & Hoven, P.C., and

Tetzlaff Law Offices, LLC, submits this Response to Defendants' Motion to Dismiss.

## INTRODUCTION

Defendants' Motion to Dismiss Counts I and II of Plaintiff's Complaint and to dismiss all claims against Defendant James Carkulis (hereinafter "Carkulis") individually is flawed because Defendants ignore the allegations of Carkulis' conduct that made the relationship more than an "arms-length" transaction. Those allegations include Carkulis' intentional concealment from WEH—who would be his company's co-shareholder after closing—of the distribution to EIH of the Supplemental Reserves (hereinafter "Reserves") that WEH had paid for, and the diversion of that money to himself. Having ignored those allegations, Defendants then fail to address the applicable law of both New York and Montana that establishes Plaintiff's claims under the special circumstances alleged. Defendants then ignore the Complaint's very specific allegations of fraud that more than satisfy FRCP Rule 9(b). Finally, Defendants not only ignore the allegations of personal benefit to Defendant James Carkulis by the diversion of the Reserves to "Carkulis individually of for the benefit of other persons or entities in which Carkulis had an interest or on behalf of which he owed an obligation" but claim that the Complaint makes no such allegation.

For the above reasons, as more fully set forth below, Plaintiff submits that the allegations of the Complaint, read in the light most favorable to Plaintiff and under the proper application of either New York or Montana law, establish claims for breach of fiduciary duty and fraud, and individual claims against Carkulis. Plaintiff further submits that Defendants' Motion should therefore be denied.

## ARGUMENT

### I.   Motion to Dismiss Standard

As Defendants admit, a court ruling on a motion to dismiss under FRCP Rule 12(b)(6) must accept all allegations contained in the complaint as true and construe the pleadings in a light most favorable to the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1172 (9th Cir. 2005).  Furthermore, FRCP Rule 9(b) as applicable here requires only that "in all averments of fraud or mistake, the *circumstances* constituting fraud or mistake shall be stated with particularity. Malice, intent knowledge, and other condition of mind of a person may be averred generally (emphasis added)."  *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997), (*superseded on other grounds by statute,* Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. §§ 78u-4(b)(1) & (2), *as recognized in Fischer v. Vantive Corp.,* 283 F.3d 1079 (9th Cir.2002)).

///

## II.      Choice of Law

The Purchase and Sale Agreement central to these claims (hereinafter the "PSA") contains a "Governing Law" section providing that New York law governs the PSA. (Doc. 1-1, §9.5). It also contains a "Consent to Jurisdiction" section providing that any action with respect to or arising out of the PSA shall be brought in the Northern District of California. (Doc. 1-1 at §9.6). Defendants argue, without authority, that Plaintiff has waived the provisions of the Governing Law by bringing suit here, where Defendants reside, rather than California. "As such, it seems that Plaintiffs (sic) have waived contractual choice of law provisions from applying to claims against Carkulis as an individual." (Doc 16, 3, footnote 1). That argument is not only unsupported, but ignores the "No Waiver" section of the PSA that specifically provides to the contrary.[1]

The apparent point of Defendants' unsupported argument is that, if the choice of law provision is valid—and there is no credible argument that it is not—Defendants argument for the application of Montana law to the extra-contractual claims, including the claims against Carkulis, must fail because Montana law clearly provides that a choice of law provision in a contract encompasses the

---

[1] "9.17 No Waiver. Any failure of a Party to enforce any of the provisions of this Agreement or to require compliance with any of its terms at any time during the pendency of this Agreement shall in no way affect the validity of this Agreement, or any part hereof, and shall not be deemed a waiver of the right of such Party thereafter to enforce any and each such provision."

contract and *related tort claims*. *Masters Group Intern., Inc. v Comerica Bank*, 380 Mont. 1, 61-62 (Mont. 2015).

Resolution of the issue of which law governs the extra-contractual claims—whether New York or Montana—is inconsequential, however, because the law of both states supports Plaintiff's extra-contractual claims against Defendants. Throughout this Response, Defendants will provide support from both jurisdictions for those claims.

## III. Defendants' Argument That Plaintiff's Allegations of Breach of Fiduciary Duty Fail to State A Claim is Flawed Because It Ignores the Allegations of Carkulis' Conduct and the Special Circumstances that Created a Fiduciary Relationship

Defendants argue that, "[a]bsent a formally recognized fiduciary relationship, a plaintiff must 'allege special circumstances or other peculiar facts that effectively transformed the parties' relationship into a fiduciary one.'" (Doc. 16, 4). Defendants then ignore the allegations of Carkulis' conduct and special circumstances that form the basis of Plaintiff's claim for breach of fiduciary duty, and the law that supports the claim.

First, on completion of the Sale, EIH and WEH would be co-shareholders in Exergy, the Target (hereinafter referred to as the "Target"). So the Sale was never a traditional arm's length transaction between traditional counterparties.

Additionally, the Complaint alleges that Defendants had knowledge of the early distribution of the Reserves—knowledge they knew that Plaintiff did not have—and knew that the early distribution was material to the purchase price Plaintiff was willing to pay. (Doc. 1, ¶4, ¶18).  Also, the Complaint alleges Defendant Carkulis himself insisted that the value of the Reserves be included in the valuation of EIH (and it was), with the expectation that it would increase the price Plaintiff was willing to pay (which it did).  *Id.* Furthermore, the Complaint alleges Defendants established a data room where Plaintiff could satisfy itself as to the Target's value, and then used the data room to deceive Plaintiff by deliberately excluding the fact of the distribution of the Reserves from the data room.  (Doc. 1, ¶16).  The Complaint also alleges that EIH had possession of the Reserves prior to Closing and that Carkulis concealed receipt of the Reserves and then diverted that money for his personal benefit.  (Doc. 1, ¶19-21).  The Complaint further alleges that after the Sale, EIH and WEH were both shareholders—in fact the only shareholders—in the Target.  And the Complaint alleges that Carkulis concealed the distribution of the Reserves from WEH and WEH did not discover the concealment, until after the sale, in October 2014.  (Doc. 1, ¶21).  If these allegations are true, which this Court must assume they are for purposes of analyzing Defendant's Motion to Dismiss, then Plaintiff has stated a claim and dismissal is improper.

Indeed, Defendants ignore all of the above allegations in their argument that Count II fails to state a claim, which is fatal to their argument.

As Defendants admit, special circumstances can give rise to a duty to disclose even in an otherwise arm's length transaction. (Doc. 16, 4). "Even in the absence of a fiduciary relationship, a duty to disclose may arise when one party's superior knowledge of essential facts renders nondisclosure inherently unfair." *Barrett v. Freifeld*, 64 A.D.3d 736, 738 (N.Y. App. Div. 2009). *See also*, *Morrow v. Bank of America, NA*, 375 Mont. 38, 57 (Mont. 2014), ("one who speaks must say enough to prevent his words from misleading the other party; one who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party...."). *See further*, *Bank of America, N.A. v. Bear Stearns Asset Management*, 969 F.Supp.2d 339, 351 (S.D.N.Y. 2013), ("[a] duty may also arise if one party has superior knowledge of information that is not readily available to the other party and the party possessing the superior knowledge knows that the second party is acting on the basis of mistaken knowledge."). Similar to the facts here, *Barrett* involved a claim by a third party against an accountant for failing to disclose facts material to a purchase. The Court denied Defendant's motion for summary judgment, finding that Defendant had a duty to disclose akin to that in a fiduciary relationship. *Barrett*, 64 A.D.3d at 738. At a minimum, then, Count II of the Complaint states a claim

for a breach of Defendant's duty to disclose.  Defendants fail to even address this issue.[2]

Furthermore, the allegation that Carkulis himself insisted that the Reserves be included in the valuation of EIH and that Plaintiff agreed, together with the parties' relationship as eventual co-shareholders, leads to the inference that Carkulis was in a unique position as CEO of WEH's future co-shareholder, and that WEH reasonably expected that he would treat the Reserves as part of the Sale, paid for by WEH, and certainly not use his position at EIH to divert the asset to himself and use the data room to conceal the diversion.  The allegation that Carkulis was in a unique position to take possession of the money and to use the data room to deceive Plaintiff, together with the above facts, demonstrates the creation of a fiduciary relationship with Plaintiff as to the Reserves; and his diversion of that money to himself demonstrates a breach of his fiduciary obligation.  Finally, the allegations of the Complaint demonstrate that Carkulis continued to conceal the fact of the early distribution from WEH even after the Sale, when WEH and his company EIH were two shareholders in the Target.

In *Barrett,* the defendant seller moved for summary judgment on plaintiff

---

[2] Count II therefore states a claim, whether it is called a claim for failure to disclose, as under New York law, or constructive fraud, as under Montana law (*see*, *Morrow*, *supra*) or as part of a fact-specific claim for breach of fiduciary duty (see *id., Barrett*, *supra*, *Signal Peak Energy, LLC. v. Eastern Montana Minerals, Inc.*, 922 F.Supp.2d 1142, 1149 (M.D. 2013).  Defendants' failure to address this issue supports that conclusion.

buyer's claim for breach of fiduciary duty by the seller.  After stating the general proposition that, "A fiduciary relationship may exist when one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge, but not in an arm's-length business transaction involving sophisticated business people," the Court then denied summary judgment, holding, "the creation of a fiduciary duty does not depend upon the existence of an agreement or contract between the parties, but results from the relationship between the fiduciary and the beneficiary." *Barrett,* 64 A.D.3d at 739.

The Court found that the circumstances surrounding the purchase, including the representations made by the seller's CFO that the sellers' finances were in "immaculate shape," and the relationship of the plaintiff as sole shareholder of a non-party corporation that stood in a fiduciary relationship with the defendant, gave rise to a fiduciary relationship between plaintiff and defendant.  *Barrett,* 64 A.D.3d at 740.  Similar factors existed and were pled in the case at bar.

Likewise, the Court in *Wiener* reversed a dismissal of a claim for breach of fiduciary duty on the grounds that no fiduciary duty existed, holding that fact-specific conduct between the parties—and in particular the repose of trust--can establish a fiduciary relationship:

> [I]t is not mandatory that a fiduciary relationship be formalized in writing, and any inquiry into whether such obligation exists is necessarily fact-specific to the particular case. Beyond what may be memorialized in writing, a court will look to whether a party reposed

> confidence in another and reasonably relied on the other's superior
> expertise or knowledge. Thus, the ongoing conduct between parties
> may give rise to a fiduciary relationship that will be recognized by the
> courts. This is precisely what plaintiffs alleged occurred here.

*Wiener v. Lazard Freres & Co.,* 241 A.D.2d 114, 122 (N.Y. App. Div. 1998),

(*citations omitted*). Montana law is in accord, holding that while the existence of a

fiduciary duty is a question of law, the inquiry is a fact-intensive one. *Gilko v.*

*Perman,* 331 Mont. 112 (2006).

Here, the facts alleged in the Complaint demonstrate that Defendants were

more than mere prospective sellers in an arm's length transaction, especially as

respects the Reserves—Carkulis insisted the value of the Reserves be included in

the valuation of Exergy; Defendants established a data room where the financial

information, including the value of the Reserves, would be held and then

deliberately deceived Plaintiff by keeping information on the Reserves out of the

data room; Carkulis used his position as CEO of EIH to take possession of the

Reserves; and even after the sale, Carkulis as CEO of a shareholder in Exergy with

WEH,[3] concealed from WEH the diversion of the Reserves.

---

[3] It is beyond cavil that shareholders in a closely held corporation owe each other a
fiduciary duty. *Sletteland v. Roberts*, 304 Mont. 21, 29 (Mont. 2000). *See also,*
*Brunetti v. Musallam*, 11 A.D.3d 280, 281 (N.Y. App. Div. 2004). There should
therefore be no dispute that as a matter of law, EIH and its officers—including
Carkulis—owed WEH a fiduciary duty at the very latest after the Sale closed on
August 1, 2014, and before WEH extracted from Carkulis the information about
the diversion of the Supplemental Reserves that he had concealed, in or about
October 2014.

For the reasons stated above, Defendant's Motion to Strike Count II should be denied.

## IV. Defendants' Argument that Plaintiff's Complaint Fails to State a Claim for Fraud is Wrong, Because Even Under the Pleading Standard Argued by Defendants, the "Who, What, When, Where and How" of the Fraud are Clearly Alleged in the Complaint

Defendants' main argument for dismissal of the fraud claim is apparently that the Complaint alleges Defendant Carkulis was at all times acting on behalf of EIH.  First, the Complaint clearly states, among other things, that Carkulis diverted the Reserves for his personal benefit, and so Defendants' argument that Carkulis acted solely on behalf of EIH is simply wrong. (Doc. 1, ¶21).  Furthermore, it is well settled in New York and Montana that officers and directors of a corporation may be held personally liable for fraud if they participate in it or have actual knowledge of it.  *Cohen v. Koenig,* 25 F.3d 1168, 1173 (2d Cir. 1994); *Poulsen v. Treasure State Industries, Inc.*, 192 Mont. 69, 82 (Mont. 1981).  This is true even if the representations are in furtherance of corporate business, *Id*., and so is especially true when in furtherance of personal gain.

The Complaint alleges Carkulis knew the distribution of the Reserves to EIH was material to Plaintiff (who had paid for the Reserves), concealed the receipt by EIH of the Reserves, and diverted those Reserves to himself, all without

the knowledge of Plaintiff.  (Doc. 1, ¶20-21).  The "who" in the alleged fraud is—unmysteriously—Carkulis.

The Complaint further alleges that Carkulis intentionally misrepresented the financial status of the Target—Exergy—by concealing the distribution of the Reserves from Plaintiff and failing to include the change in the financial status of Exergy in the data room, knowing that Plaintiff was relying on accurate updated information in the data room.  (Doc. 1, ¶18).  The Complaint then alleges Carkulis took possession or control of the money and diverted it for his own benefit.  (Doc. 1, ¶21).  The "what" in the alleged fraud is the intentional misrepresentation by Carkulis of the financial status of Exergy, and his diversion of the money to himself, all without the knowledge of Plaintiff.

The Complaint further alleges that the receipt, concealment and diversion all took place between the time the Reserves were distributed to EIH on or about June 30, 2014 (prior to the Sale) and October 2014 (after the Sale when WEH extracted the information about the Reserves from Carkulis).  (Doc. 1, ¶19-22).  In other words, the "when" in the alleged fraud is during the period from in or about July through October 2014.

The Complaint alleges that the Reserves were received at that time by EIH, and the fact of the receipt of the Reserves and the increase in Exergy's value due to receipt of the Reserves was deliberately excluded from the financial information in

the data room prior to the Closing.  (Doc. 1, ¶20).  The "where" of the fraud is where EIH does business, and where Carkulis was located during the time he concealed the information from Plaintiff and excluded it from the data room.

The "how" of the fraud is alleged simply:  "Since the Reserves were released prior to the Sale, EIH was at that time still the owner of 100% of Exergy and EIH and Carkulis were therefore aware of the distribution and had access to and control of Exergy's portion of the Reserves."  (Doc. 1 ¶ 19).  "Carkulis intentionally concealed the early release and distribution of the Reserves from WEH, and misled WEH as to the immediate availability of the funds."  (Doc. 1, ¶ 20).  "After the Reserves were distributed on June 30, 2014 and sometime prior to October 2014, Exergy's portion of the Reserves was diverted to Carkulis, or to person or entities owned by Carkulis or on whose behalf he owed an obligation."  (Doc. 1, ¶ 21).

The elements of fraud against Carkulis are clearly stated, and are more than adequate to satisfy the pleading requirements of FRCP Rule 9(b).  Defendants' Motion to Dismiss Count III of Plaintiff's Complaint for fraud against Carkulis should therefore be denied.

**V.    Defendants' Argument That The Complaint Fails To State A Claim Against Carkulis Individually Is Wrong Because Carkulis Is Personally Liable For Failure To Disclose, Breach Of Fiduciary Duty, And Fraud**

This is not a case of alter ego or disregard of corporateness, and Defendants arguments along those lines miss the point.  The allegations of the Complaint state

a claim of individual wrongdoing, plain and simple.  Under the law of each New York and Montana, an individual who commits a tort, even in furtherance of a corporate objective, is personally liable. *Cohen v. Koenig,* 25 F.3d 1168, 1173 (2d Cir. 1994); *Poulsen v. Treasure State Industries, Inc.*, 192 Mont. 69, 82 (Mont. 1981).  A corporate officer who commits fraud, even in furtherance of corporate goals, incurs personal liability.  *Id.*  Likewise, breach of fiduciary duty creates personal liability in the fiduciary.  *Manley v. AmBase Corp.*, 126 F.Supp2d 743, 756 (S.D.N.Y. 2001).  *Crystal Springs Trout Co. v. First State Bank of Froid*, 225 Mont. 122, 129 (Mont. 1987).

Defendants' argument at page 14 of its Brief that "WEH does not make any allegations that Carkulis acted with the intent to harm WEH or that he acted for his own pecuniary benefit *with the exception of the Supplemental Reserve distribution* (emphasis added)," ignores that the concealment and diversion of the Reserves is *the subject matter* of the Complaint—it is the very thing this case is about.  The argument that the allegation is "weak" because "WEH does not allege that Carkulis, himself, diverted the Supplemental Reserve" not only falls short--Defendants don't argue that the allegations are insufficient, just "weak"—but is also simply wrong. Paragraph 20 of Plaintiff's Complaint alleges, "Carkulis intentionally concealed the early release and distribution of the Reserves from WEH, and misled WEH as to the immediate availability of the funds."

Finally, Defendants' argue that, "In fact, WEH includes a contradictory allegation stating that Carkulis stated that he was unaware of the Supplemental Reserve Distribution and that the money had been paid to a creditor of EIH and that the money was gone." (Doc. 16, 15). First, that paraphrase of the allegation is wrong. The allegation does not say that the money was paid to a creditor *of EIH*, but actually states, "When demand was made on Carkulis that the money be returned, he said simply that he had paid the money to a creditor and the money was gone." (Doc. 1, ¶24). Throughout the Complaint, the allegation is that Carkulis "diverted that money *to himself or for the benefit of other persons or entities in which he had an interest or on behalf of which he owed an obligation*." (Doc. 1, ¶5, ¶6, ¶21, ¶39, ¶41).

Furthermore, the argument that WEH contradicts itself because it alleges that "Carkulis stated that he was unaware of the Supplemental Reserve Distribution" ignores the spirit if not the language of the allegation: "When a representative of WEH confronted Carkulis with their discovery . . . he replied with mock surprise, 'Oh my, so that's what that extra $583,000 [in the distribution] was from!'" (Doc. 1, ¶ 24). If lost on Defendants, the point was to demonstrate that Carkulis was not just aware of the Distribution, but was mocking WEH for not having discovered his fraud earlier.

The facts alleged in the Complaint state a claim against Carkulis individually.  Defendants' Motion to Dismiss Carkulis as a defendant should be denied.

## CONCLUSION

For all of the reasons set forth above, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied in its entirety.

In the event this Court decides the totality of the facts alleged here do not support a breach of fiduciary duty claim, the claim in Count II should nonetheless survive as a failure to disclose or constructive fraud claim, and in that event, Plaintiff requests leave to amend its Complaint to allege Failure to Disclose or Constructive Fraud.

DATED this 11th day of September, 2015.

BROWNING, KALECZYC, BERRY & HOVEN, P.C.


By /s/ Kimberly A. Beatty
   Kimberly A. Beatty

\-   AND -

James D. Benak (Admitted *Pro Hac Vice*)
Tetzlaff Law Offices, LLC

Attorneys for WEH Magic Valley Holdings, LLC

16

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I certify that **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**, is double spaced, is a proportionately spaced 14 point typeface, and contains 3,558 words.

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of September, 2015, a true copy of the foregoing was served:

Via ECF to the following parties:

Tom W. Stonecipher
Matt J. Kelly
Tarlow & Stonecipher, PLLC
1705 West College St.
Bozeman, MT  59715-4913


 /s/ Kimberly A. Beatty_____
BROWNING, KALECZYC, BERRY & HOVEN, P.C.