
IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| WEH Magic Valley Holdings, LLC, a limited liability corporation,<br><br>Plaintiff,<br><br>vs.<br><br>EIH Parent, LLC, a limited liability company and James Carkulis, an individual,<br><br>Defendants. | No. CV-15-50-H-SEH<br><br>MEMORANDUM |

## **Background**

On January 18, 2017, the Court conducted a hearing on Defendants' Motion to Dismiss Counts I (In Part), and II through V of Plaintiff's Second Amended Complaint and to Dismiss James Carkulis.[1] Upon determination that resolution of the motion was premature, ruling was deferred. An amended scheduling order to permit the parties to address the several unresolved issues was entered:

Discovery closes: <u>March 17, 2017</u>

---

[1] Doc. 89.

> Discovery motions, with supporting briefs,
> shall be filed no later than 10 days following
> the moving party's compliance with
> Fed. R. Civ. P. 26(c)(1) and 37(a)(1).

| | |
|---|---|
| All pretrial motions, other than discovery motions, shall be filed and fully briefed on or before: | May 12, 2017 |
| An attorney's conference to discuss the final pretrial order preparation on or before: | June 30, 2017 |
| Proposed final pretrial order on or before: | July 14, 2017[2] |

The parties were also directed at the January 18, 2017, hearing to: (1) brief certain specific issues outlined by the Court; (2) stipulate to the content and file the complete text of the Purchase and Sale Agreement ("PSA"); and (3) for the Court to be notified if the parties did not fully agree upon content of the PSA to be filed.

On March 14, 2017, a Stipulation Re: Contents of Contract[3] was filed in which the Court was informed that the parties had not reached agreement upon content of the contract and that an issue remained unresolved as to whether certain documents held in a virtual file-sharing platform, identified in the Agreement as the "Data Room," were, or were not, a part of the PSA.

---

[2] Doc. 108.

[3] Doc. 115.

## Issues for Resolution

Additional motions filed after the January 18, 2017, hearing were: (1) Plaintiff's Notice of Dispute Re: Full Contents of Contract and Motion for Judicial Determination;[4] and (2) Plaintiff's Motion *in Limine* to Exclude Expert Testimony of James Carkulis.[5] Three briefs directed to related issues were also filed.[6] As of May 19, 2017, all motions are fully briefed. All are ripe for resolution.

The Court has determined upon assessment and review of the whole of the developed record, and notwithstanding the absence of a specific motion directed to the scope of the Agreement of August 1, 2014, that the unresolved "Data Room" issue outlined above, at bottom, defines the core of the parties' dispute, that the issue is squarely framed and fully briefed, and is appropriate for address and resolution as a question of law for the Court.

## Discussion

This Memorandum is directed specifically to determination of whether the "Data Room" documents are, or are not, a part of the PSA as asserted

---

[4] Doc. 116.

[5] Doc. 121.

[6] Doc. 120, Plaintiff's Opening Brief in Response to Court's Identification of Additional Issues and Request for Briefing; Doc. 123, Defendants' Response to Plaintiff's Opening Brief Regarding Additional Issues; Doc. 128, Plaintiff's Brief in Response to Court's Requests Regarding Principle Issues.

by Plaintiff in its Notice of Dispute Re: Full Contents of Contract and Motion for Judicial Determination.[7]

## Applicable Law

The parties agree New York law should be applied in resolving the contract interpretation issues of the case.[8] The Governing Law provision, section 9.5, of the Purchase and Sale Agreement provides:

> This Agreement, and any instrument or agreement required hereunder (to the extent not otherwise expressly provided for therein), shall be governed by, and construed under, the laws of the State of New York, without reference to conflicts of laws rules, except for Section 5.1401 of the New York General Obligations Law.[9]

Under Section 5.1401 of the New York General Obligations law, application of New York substantive law, without regard to a choice-of-law analysis, controls if there is, as here, a contractually valid choice of law provision.[10]

Established contract principles hold that "a court interpreting a contract must 'give effect to the intent of the parties as revealed by the language they chose

---

[7] Doc. 116.

[8] *See* Docs. 120 at 3-7, 123 at 1-2.

[9] Doc. 115-1 at 53.

[10] *See Ministers and Missionaries Benefit Bd. v. Snow*, 45 N.E.3d 917, 922 (N.Y. 2015).

-4-

to use.'"[11] "'The proper interpretation of an unambiguous contract is a question of law for the court[.]'"[12]

"A contract is not ambiguous simply because the parties have urged conflicting interpretations."[13] "[A] contractual provision is ambiguous only 'when it is reasonably susceptible to more than one reading.'"[14] The August 1, 2014, Purchase and Sale Agreement is not ambiguous.

### **Contentions of the Parties**

Plaintiff requests a determination that "the documents in the Data Room are entitled to be relied upon by the Parties as part and parcel to the Contract."[15] Plaintiff also asserts "[t]he documents contained in the Data Room were intended by the Parties to the Purchase and Sale Agreement ("PSA") to be relied upon as an integral part of the transaction."[16] Defendants counter that "[t]he documents in the

---

[11] *Reyes v. Metromedia Software, Inc.*, 840 F. Supp. 2d 752, 755 (S.D.N.Y. 2012) (quoting *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)).

[12] *Id.* (quoting *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002)).

[13] *Id.* (citing *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993)).

[14] *Id.* (quoting *U.S. Fire Ins. Co. v. Gen. Reinsurance Corp.*, 949 F.2d 569, 572 (2d Cir. 1991)).

[15] Doc. 116 at 3.

[16] Doc. 116 at 3.

Data Room, which number 932, were not included in the definition of the parties' Agreement, nor are they included among the documents specifically identified as being part of the contract."[17]

## The Purchase and Sale Agreement

The August 1, 2014, Purchase and Sale Agreement provided for Seller ("EIH") to sell to Buyer ("WEH") 99% of EIH's membership interests (the "Equity Interests") in Exergy Idaho Holdings, LLC ("Exergy"). The scope of the transaction and the interests to be transferred were clearly and unequivocally spelled out in two specific provisions, Article 2, Section 2.1:

> **Sale and Purchase of Equity Interests**. In accordance with the terms and conditions hereof, and subject to the satisfaction or waiver of the conditions precedent to each Party's obligations as provided herein, as applicable, at Closing, Seller shall sell, transfer and assign to Buyer the Equity Interests, and Buyer shall purchase, acquire, accept assignment of and pay for the Equity Interests.[18]

and Article 9, Section 9.2:

> **Entire Agreement; Amendments**. This Agreement and the other Transaction Documents constitute the entire agreement and supersede all prior agreements and understandings, both written and oral, of

---

[17] Doc. 117 at 2.

[18] Doc. 115-1 at 19.

the Parties with respect to the subject matter hereof. No oral representations or modifications concerning this instrument nor any course of dealing between or among any Persons having any interest in this Agreement shall be of any force or effect unless contained in a subsequent written modification signed by the Party to be charged. This Agreement may be amended, modified or waived only by a written instrument executed by the Parties.[19]

The Article I Definitions and Interpretation section defines **"Agreement"** as "this Purchase and Sale Agreement, including all Exhibits, Schedules and other attachments hereto, as amended, restated or otherwise modified from time to time."[20] **"Data Room"** is defined as "all documents and materials posted to the website https://app.box.com/s/8w8vogw1r6di5poec6vu."[21]

The reference in Article I, Definitions and Interpretation, to "Data Room" documents and material posted to a designated website does not identify any Data Room material as a membership interest in Exergy to be transferred to WEH. Likewise, none of the references to Data Room materials otherwise referenced in the PSA or its Schedules can be read to include Data Room materials as membership interests in Exergy to be sold and transferred to WEH. None of the

---

[19] Doc. 115-1 at 52-53.

[20] Doc. 115-1 at 7.

[21] Doc. 115-1 at 8.

Schedules identified in the "SCHEDULES" section[22] of the PSA can be said to have any application to the scope of the transaction or the interests to be transferred.

In short, none of the documents held in the virtual file-sharing platform described as the "Data Room" nor any interest said to be represented in or identified by the Data Room contents, including the so-called Reserves, were a part of the Equity Interests to be transferred by EIH and sold to WEH as a part of the Purchase and Sale Agreement of August 1, 2014. WEH has no breach of contract claim against EIH founded on failure of EIH to transfer the $583,868 in Reserves to WEH, as is claimed by WEH, or based upon failure of EIH to disclose to WEH that transfer of the $583,868 in Reserves had occurred prior to transfer of the Equity Interests under the Agreement.

DATED this 7th day of June, 2017.

SAM E. HADDON
United States District Judge

---

[22] *See* Doc. 115-1 at 5.