
FILED
DEC 0 8 2017
Clerk, U.S. District Court
District Of Montana
Helena

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# HELENA DIVISION

| | |
|---|---|
| WEH Magic Valley Holdings, LLC, a limited liability corporation,<br><br>Plaintiff,<br><br>vs.<br><br>EIH Parent, LLC, a limited liability company and James Carkulis, an individual,<br><br>Defendants. | No. CV-15-50-H-SEH<br><br>MEMORANDUM |

## Introduction

On June 7, 2017, the Court issued its Memorandum in this case which addressed in detail: (1) the parties' contentions; (2) the August 1, 2014, written contract of the parties;[1] and (3) the unresolved issue of the "Data Room," which at bottom, defined the core of the dispute between the parties. In that Memorandum, the Court concluded, inter alia:

---

[1] The Purchase and Sale Agreement ("PSA").

Article I, Definitions and Interpretation, to "Data Room" documents and materials posted to a designated website does not identify any Data Room material as a membership interest in Exergy to be transferred to WEH. Likewise, none of the references to Data Room materials otherwise referenced in the PSA or its Schedules can be read to include Data Room materials as membership interests in Exergy to be sold and transferred to WEH. None of the Schedules identified in the "<u>SCHEDULES</u>" section[2] of the PSA can be said to have any application to the scope of the transaction or the interests to be transferred."

In short, none of the documents held in the virtual file-sharing platform described as the "Data Room" nor any interest said to be represented in or identified by the Data Room contents, including the so-called Reserves, were a part of the Equity Interests to be transferred by EIH and sold to WEH as a part of the Purchase and Sale Agreement of August 1, 2014. WEH has no breach of contract claim against EIH founded on failure of EIH to transfer the $583,868 in Reserves to WEH, as is claimed by WEH, or based upon failure of EIH to disclose to WEH that transfer of the $583,868 in Reserves had occurred prior to transfer of the Equity Interests under the Agreement."[3]

"After the June 7, 2017, ruling was entered, the Court vacated an existing pretrial order deadline and established a briefing scheduling for any remaining claims, which included allowing each party the option to refile motions for

---

[2] *See* Doc. 115-1 at 5.

[3] Doc. 132 at 7-8.

summary judgment."[4] On September 22, 2017, Defendants filed a Renewed Motion for Summary Judgment[5] on Counts II through V of Plaintiff's Second Amended Complaint ("Renewed Summary Judgment Motion")[6] in which each of the claims asserted against James Carkulis ("Carkulis") was grounded in the contention that Plaintiff had been wrongfully deprived of the $583,868 of Reserves which it had sought to recover in Court I of the Second Amended Complaint.

The Renewed Summary Judgment Motion and a separate and a still-pending Motion *in Limine* to Exclude Expert Testimony of James Carkulis[7] filed on April 27, 2017, have now been fully briefed. All issues raised by the Renewed Summary Judgment Motion are ripe for disposition. A hearing on the motion was held on December 5, 2017. In addition, issues that were raised earlier by Defendants' Motion to Dismiss Counts I (In Part), and II through V of Plaintiff's Second Amended Complaint and to Dismiss James Carkulis[8] that have not been resolved

---

[4] Doc. 173 at 2.

[5] Doc. 164.

[6] Counts II, III, and V are against Carkulis only, Count IV (negligent misrepresentation) is asserted against EIH and Carkulis.

[7] Doc. 121.

[8] Doc. 89.

also are addressed in this Memorandum.

## Discussion

At the outset it is appropriate to note that Defendants' present motions are directed to what are in substance restated versions of Plaintiff's efforts to relitigate the Court's June 7, 2017, ruling that the Reserves for which breach of contract recovery was sought were not within the scope of the August 1, 2014, Agreement and that Plaintiff had no viable claim of breach of contract grounded in the Reserves issue. All such claims have been and remain resolved and dismissed as the law of the case.

The law of the case doctrine provides "'that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"[9] Divergence from the doctrine "generally requires the discovery of new and material evidence not presented in the prior action or 'an intervening change of controlling legal authority, or [a showing that] the prior decision is clearly incorrect and its preservation would work a manifest injustice.'"[10] Such exceptional circumstances are not present here. Further

---

[9] *Pepper v. United States*, 562 U.S. 476, 506 (2011) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

[10] *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1336 (Fed. Cir. 2004) (quoting *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed. Cir. 2001).

consideration of the issue is neither necessary nor appropriate.

Remaining Issues in Count I - Breach of Contract Against EIH and Carkulis:

As addressed in the June 7, 2017, Memorandum, the Court has held: "WEH has no breach of contract claim against EIH founded on failure of EIH to transfer the $583,868 in Reserves to WEH, as is claimed by WEH, or based upon failure of EIH to disclose to WEH that transfer of the $583,868 in Reserves had occurred prior to transfer of the Equity Interests under the Agreement."[11] The remaining and unresolved issues in Count I relate only to what are claimed by WEH to be unpaid reimbursement of third-party legal expenses due under the PSA to be recovered from EIH.

Count II - Fraud Against Carkulis:

The Court has concluded that "none of the documents held in the virtual file-sharing platform described as the 'Data Room' nor any interest said to be represented in or identified by the Data Room contents, including the so-called Reserves, were a part of the Equity Interests to be transferred by EIH and sold to WEH as a party of the Purchase and Sale Agreement of August 1, 2014,"[12] and, in addition: "The PSA did not contemplate or require EIH to transfer Reserves to

---

[11] Doc. 132 at 8.

[12] Doc. 132 at 8.

WEH as a component of the PSA transaction."[13]

The fraud claim is based on the assertion that the financial information in the Data Room was false because it overstated the value of Exergy by the value of the Reserves, that Carkulis's representation that the value of the Target included the value of the Reserves was likewise false, and that Carkulis failed to correct those representations. Given the Court's conclusions restated above, the fraud claim is not viable.

The fraud claim also fails since it is based on the same factual allegations and seeks the same damages as the breach of contract claim. To maintain such a claim with a breach of contract claim under New York law, the plaintiff must: "(i) demonstrate a legal duty separate from the duty to perform under the contract . . . ; (ii) or demonstrate a fraudulent misrepresentation collateral or extraneous to the contract . . . ; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages . . . ."[14] As noted, the fraud claim here is founded on the same duties that WEH argues were breached in the breach of contract claim, are based entirely on Carkulis's non-disclosure of information relating to the Reserves, and seeks the same damages as those sought for breach of

---

[13] Doc. 133 at 1-2.

[14] *Bridgestone/Firestone, Inc. v. Recovery Credit Servs, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted).

contract. This duplicative fraud claim cannot survive even with the added assertion that WEH is also entitled to punitive damages. A punitive damages claim "is not a basis to maintain an otherwise duplicative fraud claim."[15]

In addition, the No Further Representations (5.2) Clause bars the fraud claim. Section 5.2 provides: "no information or material provided by or communication made by Seller or any of its Representatives shall constitute, create or otherwise cause to exist any representation or warranty by Seller."[16] The alleged fraud is that Carkulis, a Representative,[17] misstated the value of Exergy. "A party to a contract cannot allege that it reasonably relied on a parol representation when, in the same contract, it 'specifically disclaims reliance upon [that] particular representation.'"[18]

WEH also relies on the "No Material Adverse Effect" and "Full Disclosure" Clauses to bolster its fraud claim. However, Section 4.2.10.2 (No Material Adverse Effect) representations are made on behalf of Seller (EIH) only, not

---

[15] *MBIA Ins. Corp. v. Credit Suisse Securities (USA) LLC*, 55 Misc.3d 1204(A), 2017 Slip Op. 50389(U); *see Mosaic Caribe, Ltd. v. AllSettled Grp., Inc.*, 117 A.D.3d 421, 422-23 (1st Dept 2014).

[16] Doc. 115-1 at 40.

[17] Doc. 115-1 at 16.

[18] *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 319 (S.D.N.Y. 2002) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 345 (2d Cir. 1996)).

Carkulis. The Section 4.1.11 (Full Disclosure) assertion made on behalf of Seller or Affiliate, relates only to "assembling" materials for the Data Room. There is no claim the Data Room documents were not accurate when assembled.

The entire fraud claim, asserted as it is only against Carkulis, is dismissed.

## Count III - Constructive Fraud Against Carkulis:

"'The elements of a cause of action to recover for constructive fraud are the same as those to recover for actual fraud with the crucial exception that the element of scienter upon the part of the defendant, his [or her] knowledge of the falsity of his representation, is dropped . . . and is replaced by a requirement that the plaintiff prove the existence of a fiduciary or confidential relationship warranting the trusting party to repose his [or her] confidence in the defendant and therefore to relax the care and vigilance he [or she] would ordinarily exercise in the circumstances.'"[19] "The core of a fiduciary relationship is 'a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions.'"[20] No fiduciary relationship is shown to have existed in this case.

---

[19] *Levin v. Kitsis*, 82 A.D.3d 1051, 1054 (N.Y. App. Div. 2011) (quoting *Brown v. Lockwood*, 76 A.D.2d 721, 731 (N.Y. App. Div. 1980).

[20] *Faith Assembly v Titledge of N.Y. Abstract, LLC*, 106 A.D.3d 47, 62 (N.Y. App. Div. 2013) (quoting *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 19 (2005); *see also Gall v. Colon-Sylvain*, 151 A.D.3d 698 (N.Y. App. Div. 2017).

No facts have been pleaded or established to support a special relationship between WEH and EIH necessary to a claim of constructive fraud. This case involves an arm's length commercial transaction between sophisticated parties, both represented by counsel at all phases. The constructive fraud claim fails.

In its response brief WEH, attempts to restate its position to assert that its constructive fraud claim is actually a claim for fraudulent concealment.[21] Under New York law, fraudulent concealment requires: "(1) an omission of a material fact; (2) intent to defraud; (3) duty to disclose, (4) reasonable reliance on the omission, and (5) damages suffered."[22]

Absent amendment of pleadings, which has not been requested or permitted, no fraudulent concealment claim is before the Court.[23] Moreover, even if pleaded, the Reserves were not a part of the PSA. What WEH's claimed as omitted material fact was Carkulis's failure to disclose information about the Reserves. The fraudulent concealment claim, even as restated, fails.

Count IV - Negligent Misrepresentation Against EIH and Carkulis:

"'Under New York law, there is no cause of action for negligent

---

[21] *See* Doc. 168.

[22] *Katehis v. Sovereign Assocs., Inc.*, 44 Misc.3d 1220(A), 2014 N.Y. Slip Op. 51215(U); *see Bovsun v. Sanperi*, 461 N.E.2d 843 (1984).

[23] The deadline for amending pleadings was September 30, 2016. See Doc. 81.

misrepresentation absent a "special relationship of trust or confidence between the parties.""[24] "Such a special relationship of trust generally does not exist between sophisticated commercial entities entering into arms-length business transactions.[25] None was present in this case.

As noted, no facts are pleaded or proven to support a special relationship between WEH and EIH. Rather, as noted, the case between WEH and Carkulis, involved an arm's length commercial transaction between sophisticated parties, both represented by counsel at all phases. The negligent misrepresentation claims against EIH and against Carkulis are dismissed.

## Count V - Unjust Enrichment Against Carkulis:

WEH does not meaningfully dispute opposition to the unjust enrichment claim. Instead, it offers the Court the opportunity to reverse its ruling that the Reserves were not part of the Equity Interests at Closing. It concedes, however, that if the Court's ruling on the Reserves issue is not altered, this claim is moot.

New York law is clear that if there is a breach of contract claim and a valid,

---

[24] *Dyncorp*, 215 F. Supp. 2d at 329 (quoting *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 63-64 (2d Cir. 1988)).

[25] *Id.* (Citing *United Safety of Am., Inc. v. Consol. Edison Co. of N.Y.*, 213 A.D.2d 283, 286 (1st Dep't 1995).

enforceable contract is found, an unjust enrichment claim is duplicative.[26] The unjust enrichment claim against Carkulis is dismissed.

<u>Section 9.12 Limits Plaintiff's Recovery to General Damages:</u>

Limitation of damages clauses are generally enforceable. New York courts have recognized two exceptions to general enforceability: (1) the disparity in bargaining power exception; and (2) the *Kalisch-Jarcho* exception (which "renders the clause unenforceable only with respect to the specific breach at issue when the breaching party's conduct 'smacks of intentional wrongdoing'").[27] Under the second exception, "the defendant must have acted with malice or reckless indifference *in breaching the contract specifically.*"[28] The malicious conduct must be motivated by something more than economic self-interest.[29] None has been shown. Moreover, section 9.12 which precludes "consequential, indirect, special or punitive loss or damage"[30] against both EIH and Carkulis, is an alternative basis warranting dismissal of non-contractual claims. Such damages are not recoverable

---

[26] *See PNC Bank, Nat'l Ass'n v. Wolters Kluwer Fin. Servs., Inc.*, 73 F. Supp. 3d 358, 370 (S.D.N.Y. 2014).

[27] *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 544 B.R. 75, 84-85 (Bankr. S.D.N.Y. 2016).

[28] *Id.* at 88.

[29] *See Id.* at 89-90.

[30] Doc. 82-2 at 55.

in this case.

ORDERED:

1.  Defendants' Renewed Motion for Summary Judgment on Counts II through V of Plaintiffs' Second Amended Complaint[31] is GRANTED.

2.  Unresolved issues in Plaintiff's Count I are limited to what are claimed by WEH to be Third Party Legal Expenses to be recovered from EIH under the PSA.

3.  Plaintiff's pending Motion *in limine* to Exclude Expert Testimony of James Carkulis[32] will be addressed separately by the Court.

DATED this 8th day of December, 2017.

/s/ Sam E. Haddon
SAM E. HADDON
United States District Judge

---

[31] Doc. 164.

[32] Doc. 121.